# United States District Court
# for the District of New Jersey

Bruce M. McLaughlin,                    )
        Plaintiff,                    )
                           )  Civil Action#: _11 - 7305_
          -vs-                    )  _____SRC)_____
                           )
United States of America,               )
(Department of Veterans Affairs)        )
              Defendant(s).    )

**RECEIVED**

**DEC 15 2011**

**PARTIES**:

AT 8:30_____M
WILLIAM T. WALSH, CLERK

## Plaintiff, *Pro Se*
Bruce M.McLaughlin
4130 MacArthur St.
Winston Salem, NC 27107

## Defendant(s)
United States of America **/**
Department of Veterans Affairs
810 Vermont Avenue, NW
Washington, DC 20420

## JURISDICTION:

- **FTCA; pursuant to: 28 U.S.C. § 1346(b).** Medical Malpractice that occurred at the Veterans Hospital in East Orange, NJ, by a Department of Veteran Affairs Doctor, while acting under the Scope of his Employment.

- **Constitutional; 5th Amendment; Due Process**: Violations in Administrative/Procedural Due Process.

## CAUSE OF ACTION

**HISTORY**:

On May 31, 1978, I, Bruce M.McLaughlin, being the disabled Veteran

and Pro Se Plaintiff in this case, was scheduled for surgery to have

3 Knowles surgical pins w/retaining nuts, removed from my Service

Connected (S/C) left hip.  This Malpractice had occurred at the

Veterans Hospital East Orange, New Jersey by a VA Orthopedic Surgeon.

It was highly recommended by doctors employed with the Department of

Veterans Affairs (DVA, hereafter), prior to the Malpractice

Procedure, that the surgical pins be removed, due to one of three

pins protruding into the joint space.

Language that was used by 1 Army and 2 DVA doctors, consisted of the

following statements:

December 18, 1975 (Army Dr.): "...*has penetrated the head and is into*

*the joint space.*",

May 6, 1976 (DVA Dr.): "... *pins-have to be removed.*" and...

December 7, 1976 (DVA Dr.): "...*pins are working loose.*" / "*failed*

*prosthesis*".(fn [1])

All these statements were made, prior to May 31, 1978, and is part of

the supporting evidence in this case.

On June 1, 1978 as an admitted patient, I asked the DVA, in opening

a new claim (to):

"...*Request these Hosp. reports in support of my claim.  Also, I make*

**1**

---

1  Despite the fact that "Failed Prosthesis" is mentioned, the RO failed at awarding me for such as per Title 38.

*claim, for a back problem which I feel is directly aggravated by my*

*SCD* (Service Connected Disability). *Please rate back condition as*

*an adjunct cond.*(ition)." I felt the damage starting to occur then.

Between 5/31/78--6/19/78, a DVA doctor performed a procedure that

clearly boggles the mind. The operating physician incises the left

leg, then after the procedure, wrote on a form that he could not

remove the three pins. Instead of using a Parallel drilling

technique to loosen the grip, or using appropriate sized Cookie

Cutters, he instead concludes the surgery by cutting the extruding

ends of the pins even with the femur, leaves the retaining nuts off,

and sutures me back up, thus, leaving the protruding pin in the joint

space in place without the retaining nuts to keep them stable.

Sometime between 5/31/78-6/19/78, the operating physician admits

fault, along with the knowledge that the pins were to be removed,

when he documents: (1) "*Pins Removal Left Hip...* (2)*Trimming of*

*access*(sic) *pins.*"

Also stated: (3) "*Attempted Removal of Pins w*(was)*Unsuccessful-Pins*

*were cut with bone.*" All 3 statements show omission by any standard.

On 6/29/78, the operating physician commits acts resorting to a cover

up with fraudulent statements made, by writing on a document, *after*

the surgery occurred, that this was an "*EXPLORATION*".

For the record...

I did NOT sign a legal consent form, advising me and/or authorizing

this to be an 'Exploratory Surgery'.

2

I'm sure that it is well known in the Legal Community, that

Exploratory Surgery is a mutual agreement between Doctor and Patient

and a mutual signature is required prior to any procedure, if the

surgeon cannot determine what the cause of pain is attributed to.

This signed authorization to perform an 'Exploratory' protects the

operating physician from malpractice suits.

Regardless, this doctor was aware of the causation of pain via X-ray

and other prior notes, so performing an "exploration" was never

mentioned before the malpractice occurred.

This case does not reflect an exploratory procedure as it was

claimed, thus constituting a fraudulent claim made by a doctor to

cover up his misdeeds.  Ironically, after the exploration comment,

the doctor states, on the same line: *"removal of Knowles pins."*...

thereby, contradicting himself, being that the *removal* wasn't done

and a direct knowledge prior to the procedure, of the pins having to

be removed.

On 6/29/1978, the doctor stated: *"LT HIP HAS FULL RANGE OF MOTION"*.

In earlier notations made by other DVA doctors; November 8, 1976, Dr.

Alexander Strelinger had stated the following: *"Movement of the Left*

*hip: Ext. Abduction is 15 degrees deficient, Int. Adduction is 5*

*degrees deficient, Traction is 15 degrees deficient, Ext. & Int.*

*rotation is at full range."*

Also mentioned are: *"Traction and Muscle Atrophy."*.

At a physical conducted on December 7, 1976, a DVA doctor diagnosed

3

my conditions even further, when he stated: *Degenerative Arthritis L (left) hip 2 degrees to aseptic necrosis* (fn [2]) *2 degrees to slipped cap from epiphisis ROM—flexation 90 deg., ext. to 0 deg., int. rotation—ext 10-15 deg., abd./add 20 deg., 1/2" shortening.*

The same DVA doctor made the statement: *"Pins working loose."*

With this said, serious doubt should be cast over the document claiming that I had *"Full range of Motion"* and *"No Pain"*.

No Human walking this planet requires any sort of degree or specialty in Orthopedics to know that if you have arthritis of any severity, it IS painful and you certainly don't have "Full range of Motion" as was claimed, especially with spurring and a protruding pin in the joint.

Prior to the malpractice procedure of June 1978, I had been diagnosed with: *Arthritis, Aseptic Necrosis, Failed Prosthesis, Atrophy, 1/2 shortening, pin penetration/pins working loose.*

Lastly, the DVA ignored these statements in rendering a proper disability determination, thus, denying me the right to a fair and just disability determination, aka: *Administrative Due Process.*

In continuation to the actual procedure conducted on or around May 31 to June 19, 1978...

On the same 6/29/78 VA form, the examining doctor had written across the top of the page:

*"OLD CHART MISSING"* (fn [3]), **AFTER** the surgery was performed.

**4**

---

2   Even though I was diagnosed w/"Aseptic Necrosis" of the S/C Joint, the VA failed at awarding me for this condition.

3   Adjudicators at the DVA investigating my claim (2004-05) and Regional Counsel in this case (2010) were unable to obtain the Operative Report either time from the Veteran Archives. The Operative Report, which is crucial in this case, is not in my C-File either, however, the entire 1988 Operative Report is.

On 7/13/1978, this doctor states: *"Follow up of REMOVAL OF KNOWLES PINS"*... & *"NO PAIN"*.

On a 8/18/1978 RATING DECISION rendered by the DVA, resorts to the same language written by the doctor and is misleading in it's language:

*"He was admitted for removal of the pins on the left since he has been suffering from aching hip."* and *"The attempted removal of the pins was unsuccessful."* (Knowledge of an omission).

Deceptive and careful wording was used implying a less severe "aching hip", when other doctors had mentioned that a pin was penetrating the joint space is covering up the true ailment and causation of excruciating pain and a contributor of my antalgic gait, despite what others had claimed all along and the DVA neglecting to question this doctor, with his controversial statements: *"Removal of Knowles Pins"*, when in all actuality, they weren't removed.

January 1980, further damage to the hip was occurring, when I reported for an exam at the VA Hosp.  The examining doctor notated: *"...There is a progressive osteoarthritic changes demonstrating spurring in the head and neck.  There is a narrowing of joint space with osteosclerosis in the superior margin of acetabulum."*

Also in January 1980, another doctor noted: *"X Ray - DJD with sclerosis of femoral head and acetabulum - marked irregularity of joint surfaces.  3 Moore pins - cut at lat* (Lateral) *cor*(tex) (undecipherable)... *One pin protruding into femoral cartilage.  S/P*

**5**

*Moore pinning L* (left) *hip* – *marked DJD*.

There is a showing that the Operative Report was destroyed, when the DVA sent a letter on March 31, 1980, when they wrote: *"Please let us know if you were a inpatient or outpatient at VAMCenter East Orange."* (Form FL 21-95)

In Sept. 1980 (fn [4]), I left New Jersey to make every attempt under the Continuous Treatment Doctrine, to have VA doctors from California ('82-'84), Colorado ('84-'87), and in North Carolina('87-'88) to remove these pins (fn [5]) from my Service Connected Hip.

To no avail, until 1988...ten years later.

In July and in September 1984, I notified the DVA in Denver that I wanted my leg fixed, and/or an increase in my disability rating, being that I could not maintain gainful employment, otherwise, I was going to see an attorney for Medical Malpractice. (fn [6])

The DVA ignored my threat both times and considered it as nothing more than an *"NOD?"*. The DVA did not submit an SF-95, nor did they advise me on how to file an Administrative Claim.

I couldn't afford the services of an attorney to pursue this, nor did I have contents of my claims file to submit a bona fide claim.

In Sept. 1988, a Duke University intern at the Durham Veterans Hospital finally agreed that I was a candidate for a Total Hip replacement. Under direct supervision from his Professor, the

**6**

---

4   From Sept. 1980 till 1982, I drove around the country living in my car at times, and living in run down apartments/rooming houses. In all actuality, I was homeless with no permanent address.

5   In September 1988, the Durham, NC VA Hospital installed a Total Hip (Prosthesis).

6   I made every attempt to have VA doctors correct this mistake from 1982 and by 1984 was fed up with the lack of concern and options. In 1988, the Durham, NC VA Medical Facility, finally installed a Total Hip Replacement.

doctor, using the different tools and cutting apparatus required,

proceeded to remove the pins from the *severely deformed* hip head and

excise the actual head.  Even though the pin removal was documented

as '*difficult*', they were successfully removed with the use of a

drill and appropriate sized cookie cutters.

A new prosthetic hip was successfully installed.  The operative

records reflecting this 1988 procedure, word for word, are completely

intact and in my claims file.

In June 2002, I was first made aware of my right to file an 1151

Claim, while employed at the DVA as a clerk.

During 2004, I discovered the FTCA, but could not pursue this until

the results of the 1151 claim.

(End of "History")

At this stage, prior to the filing of this complaint to the Court, it is Factual **that**...

**#1**) Prior to enlistment into the Army, I disclosed to officials at AFEES that I had 3 surgical pins in my left hip; I was examined and was considered to be "*Fit for Duty*" as an *Infantryman*. (fn [7])

**#2**) My Service Connected Disability, involved the penetration of a surgical threaded pin into the joint space, while on active duty between Sept. 1975 to April 1976, but was never compensated for such.

**#3**) I was found ineligible for Military Service, by a Military Tribunal in April 1, 1976.

**#4**) This protruding pin was the nexus for my Medical Discharge on April 28, 1976.

**#5**) One Military Dr. and Two VA Drs. had made reference to a pin penetration and/or pin removal, prior to May 31, 1978.

**#6**) The 3 pins had to be removed to insure my health, safety and well being, especially relating to my recent Compression Fracture @ L/2.

**#7**) This procedure, which occurred on the first week of June in 1978, is a Medical Malpractice case, being that a doctor, who was *acting under the scope of his employment*, was *careless, lacked proper skill,* (was) *negligent,* (and) who made an *error in judgment,* was unaware of the procedure/tools required, or just disinterested in the removal of 3 surgical pins from my S/C hip, like it was done in October 1988.

**#8**) This surgery was performed at the East Orange VA Hospital, during normal business hours, by an Orthopedic Doctor who was a Gov't

**8**

---

7  Enlisted as an Infantryman, even though I wanted to enlist as a Medical Corpsman.

employee, between May 31, 1978 thru June 19, 1978.

#**9**) This doctor was well aware from previous statements and X-rays, that at least one pin had penetrated into the joint space and that it had to come out.

#**10**) This doctor could not complete the procedure and left the protruding pin in place and as records show, did *significant damage* (fn **8**) to the hip ("*severely deformed head*") and has been found to be proximately related via antalgic gait, to my back conditions (Lumbar) that I suffer with today by DVA officials (2011).

#**11**) The doctor cut the pin extrusions even with the bone (Femur), which prevented removal by another Surgeon, unless extensive cutting and drilling was performed, as was done in October 1988.

#**12**) The doctor left crucial retaining nuts off the pins, when he cut the extruding ends off.  The nuts prevent pin movement/shift.

#**13**) The doctor made fraudulent statements about my condition and procedure (Full ROM/No Pain/Exploration).

#**14**) The doctor wrote in "*Exploration*", only *after* the surgery and without my signed consent prior to the procedure.

#**15**) The DVA utilized specific wording, such as "*Unsuccessful*", yet, no questions were asked of the doctor as to WHY, by **ANY** DVA official, of his questionable procedure, his diagnosis, his comments, my signed consent agreeing to an 'Exploratory Procedure', or the Missing Operative Report prior to the August 1978 disability rating.

9

---

8  January 19, 2011 actual statement rendered by Regional Counsel at DVA admitting to the severity of the S/C hip condition, showing the DVA's blatant disregard to repair or compensate for such a condition until 1988.  Furthermore, this supports my GAIT argument made over many years, despite what DVA dr's. had said regarding NO GAIT.

**#16**) In their August 18, 1978 Rating Decision, the VA was aware that this was, in the least, a botched medical procedure and were aware when rendering a decision, using identical language made by the doctor, including language stipulating *negligence, a wrongful act* or *omission*.

**#17**) The DVA rendered a disability determination on August 18, 1978 w/o inquiring about the Operative Report.

**#18**) The DVA was aware of the effects that the protruding pin would have on my 1976 incurred spinal injury via Antalgic Gait, but decided to ignore it with their constant DENIALS throughout the years.

**#19**) Someone at the DVA (unsure of WHO or WHY), destroyed my Operative Report to hide what transpired during the surgery and to prevent me from filing a Medical Malpractice Claim.

**#20**) In 1980, I left New Jersey to seek treatment by another doctor at another facility (Los Angeles, Ca.), because I did not trust the doctors at the East Orange facility to perform this task.

**#21**) I was told by Dr's, from 1982 on, that my only option was to "*Fuse the Hip*"( fn [9]).

**#22**) I was deliberately made to look uncooperative by and to DVA doctors when I refused this medieval procedure, despite the fact that I COULD NOT have such a procedure performed, due to a 1976 Compression Fracture at L/2. (fn [10])

**10**

---

9   February 2, 1984 Disability Evaluation Examination: "...*orthopedic surgeons have offered hip fusion for relief of pain and he refused.*" (con't): "*Again, he was advised to have hip fusion and he refused.*"

10 Sept. 1988 pre-surgical consultation shows that I was NOT a candidate for a Hip Fusion, due to adverse mechanical effects it could have on L/2.

**#23)** **Twice** in 1984, I notified the DVA of my intent to seek advice

from a lawyer regarding "Medical Malpractice", it was ignored and

viewed by a DVA employee as a Notice Of Disagreement (NOD).

**#24)** In a June 12, 1984 "Statement in Support of Claim" (SF 21-4138)

I made mention of my inability to maintain gainful employment (seated

/ standing) and in keeping such, based on the pain exhibited by a

painful hip, but to no avail!

**#25)** The DVA failed at submitting an SF 95 and failed to advise me on

how and when to file an administrative claim until 2010.

**#26)** This is a 33+ year old FTCA case due to the DVAs' blatant

disregard for my rights as the victim of a medical malpractice, and

Due Process based on previous Appellant and SCOTUS rulings.

**#27)** The DVA was aware of the facts as far back as 1978 and

theoretically, starts the *Equitable Tolling* clock until somebody from

said agency complies with the Act as per those same rulings (@ #26).

**#28)** 38 USC 1151 has no Statute of Limitations of 2 years.

**#29)** I filed an "1151 Claim" in 2002, with the DVA and did not

prevail due to VCAA reasons (Pyramiding of disability claim).

**#30)** My mention of a tort under FTCA orchestrated the sending of an

SF 95 and advice on how to file by BVA Director of Communications,

Mr. David Spivey on November 2010.

**#31)** I complied with all time constraints upon receipt of an SF 95 in

2010.

**#32)** I have exhausted all Administrative remedies, prior to filing

11

this complaint, including the filing of a MOTION TO RECONSIDER and

again, after 5 more months, to no avail.

**#33**) The DVA Denied the FTCA claim on January 19, 2011 based on SoL

and failing to see 'negligence'.

**#34)** This FTCA complaint, made to this Court, is within the SoL.

#35) In a decision rendered on January 19, 2011, the DVA stated:

*"The pins were not removed, but allegedly were clipped even with the*

*femur and eventually penetrated the joint space causing significant*

*damage to the acetabular*." (fn [11])

In addressing this statement (**#35**)...

There is NO *allegedly* about this, when it is Documented, that the

pins WERE clipped even with the femur, the DVA even admitted that the

procedure was *"unsuccessful"*, in their August 1978 decision and was

the primary reason for the surgery to begin with, due to a pin

penetration in the joint space upon injury in the service.

A Military Tribunal (fn [12]) ruled in MY favor on this particular fact,

which was held on April 1, 1975, thus rendering a Service Connection,

prior to my discharge on April 28, 1976.

**#36**) In a more recent decision rendered by the Board of Veterans

Appeals, it was found to be favorable that my S/C hip (w/pinning) has

a proximate relation to my lower back condition, but ONLY the L-5

vertabra, due to my Antalgic gait times many years.

(End of ***Factual***...)                              **12**

---

11 Even the attorneys admit that there was *"Significant damage to the acetabular."*, yet I was only awarded a 20% disability
   rating from 1980-1989 for the same hip disability, despite my many years of applying, appealing and their denials. This
   sort of condition also warrants my claims for my back condition, esp. @ L-2 via my antalgic gait. It to, is still ignored.
12 Proceedings held on April 1, 1976 (See: transcript)

**DEMAND**:

My reason for this damage claim, is credible and deserves serious consideration, based on the Merits and Evidence to be presented.

**#1**) My life has been adversely effected with low income 'Temp' jobs, that didn't last long, based on the pain of a damaged S/C hip w/pin penetration, damage to my spinal components (T/12-S/1) and Rt. hip.

**#2**) My college years were sporadic due to my having to walk, sometimes long distances, to attend classes.

**#3**) I was lied to by DVA officials, my conditions lied about by an incompetent DVA dr., and clearly denied the right disability determination using ALL credible evidence from the file (Administrative / Procedural Due Process).

**#4**) My surgical records were not available to me (as the Dept. has a history of losing or shredding Veterans evidence to cover up and/or Deny claims).

**#5**) To this day, I still can't cross my left leg over my right (figure four) due to atrophy.  The DVA was made aware of this as far back as 1976 and ignored my conditions even though it's in the Code of Federal Regulations pursuant to Title 38, as a disability rating.

**#6**) The Dept. is also accused of knowing that a medical malpractice occurred in June 1978, and had knowledge of such, in the August 1978 disability determination.

**#7**) It is clear that the DVA "Deliberately Concealed" what transpired, when...

13

**A**) A DVA employee deliberately destroyed the operative report...

**B)** The DVA failed to question/investigate the doctors controversial comments, failed at inquiring on the missing Operative report and failed at locating some sort of document, with signatures, signifying that this surgery was, in fact, an "Exploratory".

**C**) The DVA failed at correcting this Negligent, Wrongful Act, or Omission until 1988, when a prosthetic hip was installed.  By then, the pinned hip had done significant damage to my spinal components.

**D**)twice in 1984 the agency ignored my Constitutional Rights to Due Process, when I referred to legal language implying and using the term: *"Medical Malpractice"* and the DVA failed to submit appropriate forms and advise me of my rights under the FTCA.

**#8**) I no longer trust the DVA for my medical care, due to the lack of quality doctors, honesty of officials, knowledge of law by adjudicators, constant denials of my Due Process rights and Bona Fide rating for my actual conditions afforded to me as a Disabled Veteran under the US Constitution, US Code and Code of Federal Regulations.

**#9**) The damage claim of 10 million is to acquire future health care for my S/C left hip, my right hip, left knee and my lumbar vertabra. I will require many hours of physical therapy, and possibly acupuncture, due to excessive weakness, arthritic conditions, pain and suffering and weight gain due to my inability to walk long distances.  There is no doubt, that I'll have to have surgery, especially to the damaged spinal components (T/12-S/1) and right hip.

**14**

**#10**) At the age of 46, I had to apply for Social Security Disability, because I can no longer work, whereas on August 2005, I was found to be eligible and considered Permanently and Totally disabled due to my multiple Orthopedic conditions.

**#11**) In 2005, I almost lost my home to foreclosure due to DVARO incompetence. (Unnecessary Delays and Denials(aka: Loss of Property).

**#12**) I had to file for Chapter 7 Bankruptcy in 2005 due to my disabling conditions and lack of income.

**#13**) As of today, I am living in substandard housing conditions because I can not afford to get my house fixed. I have Black, Green and White mold in my house, due to a severely leaking roof. I have collapsed ceilings and buckling of a hardwood floor in one of my rooms.

This house isn't fit for human habitation and the DVA is aware of this. Yet, despite this fact, and my submitting of a hardship letter through Senator Burr and/or Congressman Mel Watt, they don't care.

**#14**) I have contemplated suicide during this period due to severe bouts of stress. This to, is supposed to be in my file.

**#15**) As of June 13, 2011, my insurance company had canceled my homeowners policy, due to the condition of this house. I am unable to obtain insurance due to my being blacklisted.

**#16**) As of Dec. 2011 to around Jan./Feb. 2012, I have to file a Deed in Lieu of Foreclosure, based on my inability to repair or to pay to repair my house, based on the DVAs' ineptness. (aka:Loss of Property)

**15**

**In Conclusion...**

As it is clear as day, this case has enough merit to warrant a trial.

It is also clear that this was a deliberate cover up by multiple DVA

personnel, with the destruction of documents, constant denials,

fraudulent statements made, the spinning of facts, under-rated

disability claims, outright lies, Due Process violations, to even

admitting that there was some sort of screw up.

There is a clear admission of wrongdoing, made by DVA officials in

August 1978 and in the January 19, 2011 FTCA Investigative denial.

My Operative reports were shown to be missing as far back as

1978 by a VA employee.  This was clearly a Deliberate Concealment and

this warrants the equitable tolling doctrine to commence from the

time the records were destroyed at or around June 1978 and the August

1978 disability determination.

I didn't seek legal recourse because I was attempting to get the pins

out and possibly seek an alternative option to fixing the hip under

the stipulations set by the *Continuous Treatment Doctrine*.  I never

imagined that the Department of Veterans Affairs, who is supposed to

care for the Veteran, would pull such an underhanded stunt, a gross

violation of laws and Constitutional rights, as this case clearly

reflects with this complaint and all the evidence that I have in

hand.

When viewing this case, you have to look at the merits of this case

and not the age.  There is no doubt, that the defense will file a

Summary Judgment based on this fact.

**16**

However, the questions that have to be pondered are:

- Who was aware that a malpractice may have occurred first?

- Who prevented the case from being filed to begin with, by deliberately concealing the Facts with the destruction of documents and on TWO distinct occasions, not submitting the SF 95 documents as required by SCOTUS to conduct an investigation?

- Why did the surgeon who performed this, claim it was an "Exploration", a after the surgery?

- Why did the surgeon claim that there was *Full Range of Motion* and *No Pain,* when other doctors listed Deficiencies in range of motion in their reports before and after the surgery?

With all of this said, I humbly ask the Court to consider the evidence to be presented in this case, and grant me the right to a trial, for my many years of pain and suffering, physically, psychologically, emotionally and financially and soon to be, my Loss of Property due to deterioration of my home.

I also request that this Court view this case in a light most favorable and liberal fashion, to the *pro se* plaintiff and not hold any bias against me based on my not being able to acquire counsel.


I, Bruce M.McLaughlin, do solemnly swear, that all my statements made in this presentation to this Court, is the absolute truth and is in no way even exaggerated, under the penalty of perjury, made on this day, December 12, 2011.

_____          12·12·11
Bruce M.McLaughlin, Pro Se Plaintiff        Date

**17**